O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE BALLARD, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A., et al.<br><br>Defendant. | CASE NO. 8:12-cv-1698-JST (JPRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Doc. 71)** |

Plaintiff Steve Ballard filed his First Amended Complaint ("FAC") on February 11, 2013, asserting claims for (1) negligence, (2) violation of 15 U.S.C. § 1641(g), (3) declaratory relief, and (4) violation of California's Unfair Competition Law ("UCL"). (FAC, Doc. 42.) On July 6, 2013, Plaintiff filed a Motion for Class Certification. (Mot., Doc. 75.)[1] Defendants Bank of America, N.A. ("Bank of America"), U.S. Bank, N.A. ("U.S. Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo") opposed, (Opp'n, Doc. 78), and Plaintiff replied (Reply, Doc. 81).

Having read the papers, reviewed the admissible evidence, and considered the arguments of counsel at the hearing, the Court DENIES Plaintiff's Motion for Class Certification.

## I. BACKGROUND

According to the allegations in the FAC, in 2003, Plaintiff bought a home encumbered by a mortgage, which was serviced by Bank of America. In August 2010, Plaintiff applied for a loan modification through the Home Affordable Modification Program ("HAMP"). (Ballard Decl. ¶ 15, Doc. 72.) According to a March 5, 2012 letter sent by Bank of America to Plaintiff, Plaintiff's HAMP modification was denied at an unspecified date prior to February 21, 2011, based on the negative net present value of Plaintiff's loan. (*Id*. Ex. 15.)

On June 6, 2011, Plaintiff gave Bank of America permission to speak directly with Catherine Olsen, his "significant other," regarding his loan. (*Id*.

---

[1] Later on July 6, 2013, Plaintiff filed an Amended Notice of Motion and Memorandum of Points and Authorities. (Doc. 75.) That is the Motion the Court addresses in this Order.

2

¶¶ 1, 14.) From that point forward, Olsen communicated with Bank of America on Plaintiff's behalf. (*Id.* ¶ 16.)[2]

In September 2011, Plaintiff filed a second, non-HAMP loan modification application. (Cherkezian Decl. ¶ 14, Doc. 78-1.) Plaintiff alleges that in November 2011, an agent for Bank of America informed him[3] that he qualified for loan modification, and would receive a trial period plan. (FAC ¶ 17.) Plaintiff alleges that he was then assigned to various Bank of America employees, who gave him conflicting information regarding the status of his application. (*Id.* ¶¶ 16-21.) Bank of America variously told Olsen that Plaintiff needed to be 90 and 120 days delinquent on his account before any loan modification could proceed. (Olsen Decl. ¶ 7, Doc. 72.) Relying on those representations, Plaintiff failed to make his January 2012 mortgage payment. (Ballard Decl. ¶¶ 17-18, 25-27.) On January 17, 2012, Plaintiff was informed that his loan modification application had been denied because the investors who owned his loan had not given Bank of America the authority to modify it. (*Id.* ¶ 28.) Bank of America accepted the mortgage payment Plaintiff made in February 2012, but rejected the payment he attempted to make in March 2012. (FAC ¶¶ 27-31.)

Following the denial of Plaintiff's loan modification application, he requested the name of the current owner of his loan. (Ballard Decl. ¶ 29.) Between February 2012 and July 18, 2012, Bank of America sent him four letters

---

[2] The declaration submitted by Catherine Olsen states that she has "read the facts laid out in the [d]eclaration of Steve Ballard and compared them to notes [she] took while trying to work with Bank of America in obtaining a loan modification for Mr. Ballard" and that "[t]he facts are accurate as [she] noted them to be at the time the events were occurring." (Olsen Decl. ¶¶ 2, 4.) She attaches handwritten notes she took during various calls with Bank of America, (Ballard Decl. Exs. 3, 4, 12), however her declaration itself does not contain details regarding those calls.

[3] Given that Plaintiff states that Bank of America was communicating with Olsen from June 6, 2011 on, it is unclear if this and subsequent representations were in fact made to Plaintiff or to Olsen.

3

("Correspondence") containing conflicting representations regarding the owner of the Mortgage. (*Id.* ¶¶ 33-34, 44, 48.) On June 15, 2012, ReconTrust Company posted a Notice of Sale on Plaintiff's door, stating that he owed $377,246.70 on the Mortgage and that his home would be auctioned off on July 2, 2012. (*Id.* ¶ 47; FAC ¶ 39.)

In his FAC, Plaintiff alleges that he has been unable to determine the true owner of the Mortgage, and therefore has had no "way to seek relief with regard to his modification application. . . ." (*Id.* ¶ 51.)

On the basis of the foregoing, Plaintiff seeks certification of the following class:

> All [] borrowers who received conflicting notifications from defendant Bank of America (or assignee Nationstar) [as to] the identity of their investor, or creditor as required under 15 U.S.C. § 1641(g) after May 5, 2009 [and] whose loans were identified in the Mastr Asset Securitization Trust 2003-7.[4]

(Mot. to Amend at 4.)

Plaintiff appears to suggest that the class should be subdivided into the following two subclasses:

> (1) [A]ll borrowers in the Mastr Asset Securitization Trust 2003-7 [whose loans were assigned to] Wells Fargo and US Bank [and to whom Wells Fargo and US Bank] fail[ed] to give proper notice . . . of the assignment . . . although the borrower was trying to get a modification or other alternative to foreclosure.

---

[4] After filing his Motion for Class Certification, Plaintiff filed a Motion to Join Nationstar as a Defendant and Amend the Class Definition ("Motion to Amend"). (Mot. to Amend, Doc. 76.) Because Defendants did not oppose that motion, and because it does not change the outcome of the instant Motion, the Court GRANTS that motion and addresses the class definition proposed therein.

4

> (2) [A]ll borrowers [that] Bank of America, N.A. told they were eligible for loan modification, and that if approved, they could immediately make modified payments that would satisfy existing loan obligations, lead to a permanent modification and avoid foreclosure.

(Mot. to Amend at 7-8.)

## II. LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, --- F.3d ---, 2013 WL 4712728 (9th Cir. Sept. 3, 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ---, 131 S.Ct. 2541 (2011)). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. Pro. 23(a).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This

requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id*. at 2548. Here, Plaintiff seeks certification of the class under Rule 23(b)(1), 23(b)(2), and 23(b)(3). (Mot. at 5.)

Rule 23(b)(1) permits maintenance of a class action if

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Rule 23(b)(2) permits maintenance of a class action if

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

Rule 23(b)(3) permits maintenance of a class action if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

//
//

## III. PRELMININARY ISSUES

### A. Ascertainability

"Before a class may be certified, it is axiomatic that such a class must be ascertainable." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012) (quoting *Peel v. BrooksAmerica Mortg. Corp.*, No. 8:11-cv-0079-JST (RNBx), 2012 WL 3808591, at *2 (C.D. Cal. Aug. 30, 2012)). Plaintiff has failed to demonstrate that there exists "an objective way to determine" the members of his putative class and subclasses. *Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012).

Plaintiff argues that his proposed class and subclasses are ascertainable because "we have the identity of the mortgage backed securitized trust that houses and identifies each borrower and loan" and "[t]he financial statements of the Defendants will identify those borrowers who eventually obtained a loan modification from the trust, if any." (Mot. at 15.) However, Plaintiff's putative class consists of "[a]ll [] borrowers who received conflicting notifications from defendant Bank of America (or assignee Nationstar) [as to] the identity of their investor, or creditor . . . ." (Mot. to Amend at 4.) There is clearly no objective way to determine which borrowers received conflicting notifications from Bank of America absent individualized fact-finding. As Defendants point out, that fact-finding would involve, at the very least, reviewing the loan files of each borrower whose loan was securitized in Mastr Asset Securitization Trust 2003-7 and collecting testimony from the borrowers as to whether they received conflicting notifications regarding the ownership of their loans. (Opp'n at 11-12.)

In addition, the statute of limitations on § 1641(g) claims is one year from the occurrence of the violation, yet Plaintiff's proposed class includes all violations following May 5, 2009. 15 U.S.C. § 1640(e). Determining which class

members have claims within the statute of limitations would also require individualized fact-finding.

### B. Standing

"[I]f [plaintiff] has no [] claim, she cannot represent others who may have such a claim . . . . This principle is dispositive of [a motion for] class certification." *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Plaintiff does not have standing to represent a class asserting claims against U.S. Bank and Wells Fargo for negligence and violation of § 1641(g), because the record before the Court indicates that Plaintiff himself cannot assert either of those claims.

The basis for Plaintiff's negligence and § 1641(g) claims is U.S. Bank and Wells Fargo's alleged failure to provide notice of the change of ownership of class members' loans, as is required by § 1641(g). (FAC ¶¶ 74-77, 91-92; 15 U.S.C. § 1641(g). However, Section 1641(g) went into effect on May 19, 2009, its application is not retroactive, and the record before the Court indicates that Plaintiff's mortgage was not assigned on or after May 19, 2009. *See Jara v. Aurora Loan Serv.*, 852 F. Supp. 2d 1204, 1209 n.6 (N.D. Cal. 2012) (dismissing with prejudice plaintiff's claim for violation of § 1641(g) where publicly-filed documents indicated that plaintiff's loan had not been transferred or assigned on or after May 19, 2009.)

Plaintiff's mortgage was originated on June 25, 2003 by Countrywide Home Loans ("Countrywide"). (Cherkezian Decl. Ex. A, Doc. 78-2.) Pursuant to a Mortgage Loan Purchase and Servicing Agreement dated February 25, 2003, UBS Warburg Real Estate Securities, Inc. purchased certain residential first mortgage loans from Countrywide, including Plaintiff's loan. (*Id.* ¶ 5.) In July 2003, Plaintiff's loan was pooled with other mortgages and became part of a securitized trust named MASTR Asset Securitization Trust 2003-7 ("MASTR

8

Trust"). (*Id.* ¶ 6; *Id.* Ex. C.) At the end of the securitization process, the ownership interest in the loans pooled in the MASTR Trust, including Plaintiff's loan, was transferred to Wachovia Bank, N.A. ("Wachovia"), as Trustee for the MASTR Trust. (*Id.* Ex. C § 2.01.) Pursuant to a November 29, 2005 Purchase Agreement between Wachovia and U.S. Bank, U.S. Bank acquired substantially all of Wachovia's corporate trust business, including the MASTR Trust. (Ortiz Decl. Ex. A, Doc. 78-6.) Plaintiff does not dispute that his loan remains an asset of the MASTR trust. (Mot. to Amend at 3-4.) As such, it appears that Plaintiff does not have a claim against U.S Bank or Wells Fargo for either negligence or violation of § 1641(g). Therefore, he has no standing to seek to certify a class to assert those claims.

## IV. CERTIFICATION UNDER RULE 23

Even setting aside the issues of ascertainability and standing, the problems with Plaintiff's Motion are legion.[5] Despite the fact that Plaintiff bears the evidentiary burden on a motion for class certification, he fails to provide relevant evidence demonstrating that he meets any of the Rule 23(a) requirements.[6]

---

[5] The Court notes, for example, that Plaintiff seeks to define a class of plaintiffs "who received conflicting notifications from defendant Bank of America (or assignee Nationstar) of the identity of their investor, or creditor as required under 15 U.S.C. § 1641(g)," although this Court has twice held that Bank of America, a loan servicer, is not subject to liability under § 1641(g). (MTD Order at 4, Doc. 38, MTS FAC Order at 2-3, Doc. 63.)

[6] The only piece of evidence Plaintiff presents that could in any way be construed as relevant is a copy of the prospectus for the MASTR Trust. (Albert Decl. Ex. O, Doc. 73.) However, given that Plaintiff's class definition is not based solely on membership in the MASTR Trust, the prospectus alone is not sufficient evidence of numerosity, commonality, or typicality. Other than the prospectus, and evidence relating solely to Plaintiff's claims, (Ballard Decl. Exs. 1-22), all Plaintiff presents the Court in support of his motion are hundreds of irrelevant pages of declarations and depositions from other, unrelated cases. (Albert Decl. Exs. B-L, N.) Most of those unrelated cases involve loan modifications under HAMP, although Plaintiff's counsel appeared to acknowledge at
   (footnote continued)

Because the failure to meet any one of the Rule 23(a) requirements is fatal to class certification, the Court will only address numerosity, typicality, and adequacy, the requirements which Plaintiff most clearly and egregiously fails to meet.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In his Motion, Plaintiff argues that the numerosity requirement is met because there are 3,531 loans in the MASTR Trust. (Mot. at 6.) Although the exact contours of Plaintiff's proposed class are unclear, it is clear that the class does not simply consist of all borrowers whose loans were securitized in that trust. Rather, it appears to consist of borrowers (1) whose loans were securitized in that trust, (2) who either received conflicting notifications from Bank of America regarding the ownership of their loans or failed to receive transfer notifications from U.S. Bank and/or Wells Fargo, and (3) who, as a result, were unable to obtain loan modifications.

At oral argument, Plaintiff's counsel could do no more than speculate regarding the number of members in Plaintiff's putative class and subclasses. She represented that the universe of potential class members was approximately 40—the number of borrowers the MASTR Trust prospectus indicated were in default.[7] Given the specific factual circumstances that would need to obtain in order for one of those borrowers to fall within Plaintiff's class definition, it is evident that the actual number of class members would be far fewer than 40. As such, Plaintiff's putative class and subclasses fail to meet the numerosity requirement. *See Rannis*

---

oral argument that the loan modification application at issue in this case was not for a HAMP modification. When asked about the issue, she offered no evidence that the application was for a HAMP modification, arguing only that Plaintiff was never "clearly or conspicuously" told that the application was not for a HAMP modification.

[7] It is unclear, based on this representation, whether Plaintiff intends the putative class to be limited to those borrowers who were in default at the time that they applied for loan modifications.

1 *v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (noting that while "the
2 numerosity requirement is not tied to any fixed numerical threshold," certification
3 had been denied to "classes in the 16 to 37 range.")

### 2. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted).

Plaintiff's claim for violation of the UCL—the only claim for which he possibly has standing to act as class representative—is not typical of that of the putative class or subclass members. Plaintiff's UCL claim is based on his allegation that he was unable to receive a loan modification due to conflicting information he received from Bank of America and Wells Fargo regarding the ownership of his loan and the requirements for loan modification.[8] (FAC ¶¶ 105, 107, 109.) Plaintiff's class and subclass definitions are not limited to those borrowers who failed to receive a loan modification for the same reasons as Plaintiff. As such, the class members' claims do not all arise from the same course of events, and Plaintiff's claims are not typical of those of the class.

//
//

---

[8] Plaintiff also brings a UCL claim against US.. Bank. However, that UCL claim is based solely on U.S. Bank's alleged violation of § 1641(g). (FAC ¶ 106.) Insofar as Plaintiff's § 1641(g) claim fails, his UCL claim against U.S. Bank also fails.

11

### 3. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As to the adequacy of Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

The only evidence Plaintiff's counsel provides in support of her adequacy is her resume. (Albert Decl. Ex. M, Doc. 73-5.) That resume reflects involvement in only one case described as a class action, *Urenia v. Public Storage, et al.*, and it is unclear whether a class was certified in that case. (*Id.* at 2.)

More significantly, the myriad issues with Plaintiff's motion give the Court strong reason to doubt the adequacy of Plaintiff's counsel. First, Counsel proposes overbroad, imprecise class and subclass definitions. Second, Plaintiff lacks standing as to two of the three class claims asserted in the FAC. Third, counsel fails to provide anything approximating evidence sufficient to meet Plaintiff's burden of proof on a motion for class certification. All of this leads the Court to conclude that Plaintiff's counsel will not be able to prosecute this action vigorously.

**B. Rule 23(b) Requirements**

Because Plaintiff has not met the requirements of Rule 23(a), the Court does not address the requirements of 23(b).

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Class Certification.

DATED: September 6, 2013

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE